IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

JEFFREY CHARLES MANN, #1177589   §

VS.   §      CIVIL ACTION NO. 6:16cv1315

T. H. CHOATE, ET AL.   §

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Jeffrey Charles Mann, an inmate confined in the Texas prison system, proceeding *pro se* and *in forma pauperis,* filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

The lawsuit covers a wide array of claims involving 24 people working in the Texas prison system. Plaintiff is suing people employed by both the Texas Department of Criminal Justice (hereinafter "TDCJ") and the University of Texas Medical Branch (hereinafter "UTMB"). Before the court at this time is TDCJ Defendants Davis, Linthicum, Force, St. Pe, Opaogun, Serralde, Witt, and Britt's First Amended Motion to Dismiss (Dkt. #44), along with Plaintiff's response (Dkt. #57). Also before the court is UTMB Defendants Devore, Folmar, Hensley, Ng, Pearman and Kavetski's Motion for Summary Judgment (Dkt. #48), along with Plaintiff's response (Dkt. #73). The order also addresses Plaintiff's Motion for a Temporary Restraining Order and

Injunction (Dkt. #116), Motions for a Default Judgment (Dkt. ##17,64,97), and Motions to Strike the Defendants' Pleadings (Dkt. ##127,133).

Judge Mitchell issued Reports and Recommendations regarding the various motions. She recommended that the TDCJ Defendants' Motion to Dismiss be granted, in part, and denied, in part. (Dkt. #137). She further recommended that the UTMB Defendants' Motion for Summary Judgment be granted. (Dkt. #138). She recommended that Plaintiff's Motions for a Default Judgment and corresponding Motions to Strike Defendants' Pleadings be denied. (Dkt. #137). She finally recommended that Plaintiff's Motion for a Temporary Restraining Order and Injunction be denied. (Dkt. #136). Plaintiff filed one set of objections addressing all of the Reports. (Dkt. #144). Defendants have not filed objections. After conducting a *de novo* review of the record, the pleadings, and the paper on file, the court issues the following findings of fact and conclusions of law.

<u>Plaintiff's Factual Allegations</u>

The lawsuit was filed on November 18, 2016. Plaintiff complains about matters going back to 2010. He initially complains about dental care provided by the prison system. Prior to January 31, 2011, he chipped two teeth while biting down on a stone in a casserole. He sought restorative treatment by either fillings or crowns. He complains that treatment was delayed, which resulted in the deterioration of his dental health. Plaintiff claims that his health is deteriorating due to "increased blood pressure, digestive disorders, and loss of energy and vitality." (Dkt. #24, page 6). He further alleges that due to the lack of restorative care, he is "unable to chew and properly masticate, [and] cannot properly consume his meals within the alloted time

restraints of the TDCJ, and has lost the enjoyment of eating which formerly was one of the few joys [he] had in prison."   (Dkt. #24, page 7).

Plaintiff discusses his interactions with the various dentists.   He saw Dr. Dwayne Evans on January 31, 2011.   Dr. Evans diagnosed that he had two damaged teeth.   His prescribed treatment was to fill the teeth.   Plaintiff was rescheduled for such treatment.   Plaintiff was examined by Dr. Ginger Lambright on June 24, 2011.   She noted that Plaintiff had been scheduled for restorative care but no treatment was provided on that date.   Dr. Teddy Pearman examined Plaintiff on September 22, 2011.   Instead of providing restorative treatment, he examined Plaintiff and confirmed that fillings were needed.   Treatment was not actually provided at that time.   Dr. Edwin Ng examined Plaintiff on October 3, 2011.   He examined Plaintiff and confirmed that restorative treatment was needed.   By then, three teeth needed restorative treatment.   He issued an order for treatment, but no treatment was provided at that time.

Dr. Louis Kavetski examined Plaintiff on January 25, 2012.   Dr. Kavetski was aware that Plaintiff had been scheduled for restorative treatment, but no treatment was provided on that date. Dr. Leah Buck-Boehnemann examined Plaintiff on April 17, 2012.   Plaintiff had been referred to her.   She examined Plaintiff but did not provide treatment at that time.

Dr. Breck Bennett examined Plaintiff on November 16, 2012.   Instead of providing restorative treatment, Dr. Bennett offered to extract tooth number 15.   Plaintiff saw Dr. Bennett again on December 17, 2012.   Dr. Bennett failed to provide any treatment at that time; instead, he scheduled Plaintiff for a filling.   Plaintiff saw him again on July 10, 2014, but Dr. Bennett refused to provide restorative care.

Plaintiff was examined by Dr. David Collins on July 15, 2013.   Dr. Collins acknowledged that Plaintiff was scheduled for restorative care but no care was provided.   Dr. David Hensley examined Plaintiff and denied restorative care on May 20, 2015.   Dr. Paula Folmar examined Plaintiff on September 23, 2015.   She determined that teeth numbers 1, 10, 17, 18, and 19 needed restorative care.   She also determined that teeth numbers 12, 13, 14, and 15 needed extraction. No treatment was provided at that time.   Plaintiff saw Dr. George Devore on December 30, 2015. Dr. Devore provided treatment on tooth number 19.   Dr. Devore advised him that policy prevented him from providing treatment for more than one tooth at a time.   Plaintiff was scheduled for other procedures.

Plaintiff saw Dr. Michael Walker on March 22, 2016 and March 31, 2016.   Plaintiff states that no treatment was provided.   Plaintiff saw Dr. Donald Eckersley on June 14, 2016.   He states that no care was provided at that time.

Plaintiff states that he is suing Dr. Lannette Linthicum, the Director of TDCJ Healthcare, because she is responsible for the creation, implementation, enforcement, supervision of TDCJ-UTMB policy, procedures, customs, and practices.

Plaintiff is suing Property Officer Sherrie St. Pe for improperly confiscating his property, including legal papers, medicines, religious materials, and a sizeable amount of registered property.   He lists the date as January 12, 2010.   He also mentions September 9, 2010.

Plaintiff complains that Officer Donna Force singled him out while he was taking required educational classes in 2012 and 2013.   He was taking the classes as part of his parole plan.   She allegedly interfered with his law library and regular library sessions in 2014.   He also complained

that she gave him five disciplinary cases in 2014 and 2015. He finally complains that she confiscated legal correspondence in 2017.

Plaintiff alleges that Major Michael Britt knowingly recruited Captain Bo Smith to create a false disciplinary case against him in July of 2016. He alleges that Major Britt fabricated a story under oath and presented false testimony during the disciplinary hearing.

Plaintiff alleges that on February 25, 2016, Officer Force recruited Officer Jill Serralde to harass, retaliate and discriminate against him. On that date, a disciplinary case written by Donna Force was dismissed. Within hours, he was denied a legal visit for being one minute late. When he attempted to speak to a ranking officer, he was given a disciplinary case for creating a disturbance. Officer Serralde also gave him a disciplinary case for going to the pill line to get his medications. She denied him legal visits and threatened him for assisting other offenders. He fears that he will receive additional disciplinary cases for exercising his right of access to court.

Plaintiff complains that Officer Orumuyiwa Opaogun falsified a disciplinary report against him on July 14, 2016. He adds that Officer Opaogun failed to follow prison policy. He finally alleges that Officer Opaogun wrote the case against him with racially motivated animus.

Plaintiff next complains about an incident involving Officer John Witt on October 13, 2014. Officer Witt was hurriedly running down the run closing and slamming cell doors. Officer Witt shut a door on Plaintiff's foot, trapping it into the door frame. Officer Witt then tried to push the door harder. Plaintiff states he was able to free his foot. Plaintiff went to speak to ranking officers, and Captain Sanchez issued instructions to "lock him up." Plaintiff alleges that Officer Witt fabricated a disciplinary case for assaulting him with the door or threatening to assault him.

Plaintiff was found guilty, which resulted in a lower custody level. Plaintiff subsequently received a disciplinary case for refusing to move.

The final defendant to join in the motion to dismiss is Director Lori Davis. Plaintiff states that he is suing her because she is responsible for the creation, implementation, enforcement, and supervision of all TDCJ policies, procedures, customs and practices.

Standard of Review

TDCJ Defendants Davis, Linthicum, Force, St. Pe, Opaogun, Serralde, Witt, and Britt have filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Fifth Circuit has observed that motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). Such motions are generally evaluated on the pleadings alone. *Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986).

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). The Supreme Court clarified the standards that apply in a motion to dismiss for failure to state a claim in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The Supreme Court stated that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The Supreme Court held that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. A complaint may be dismissed if a plaintiff fails to "nudge [his] claims across the line from conceivable to

plausible." *Id.* The distinction between merely being possible and plausible was reiterated by the Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Supreme Court applied *Twombly* in a prisoner civil rights lawsuit in *Erickson v. Pardus*, 551 U.S. 89 (2007). In *Erickson*, the district court had granted the defendants' motion to dismiss based on qualified immunity because the plaintiff purportedly had not alleged facts sufficient to state a claim upon which relief may be granted. In reversing the decision, the Supreme Court reiterated that a plaintiff is not required to plead specific facts; instead, he need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 93 (quoting *Twombly,* 550 U.S. at 555). In ruling on a "motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Id.* at 94 (citations omitted). In *Erickson*, the Supreme Court criticized the appellate court's departure from the liberal pleading standards set forth in Rule 8(a)(2), particularly since the prisoner was proceeding *pro se* and *pro se* pleadings are to be liberally construed. *Id.* The Supreme Court found that the plaintiff had sufficiently plead a deliberate indifference to serious medical needs claim by stating that he had Hepatitis C and that the doctor endangered his life by withholding his prescribed medication shortly after the commencement of the treatment program. *Id.*

UTMB Defendants Devore, Folmar, Hensley, Ng, Pearman, and Kavetski have filed a motion for summary judgment. A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party for summary judgment has the burden

of proving the lack of a genuine dispute as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision Am. Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48.

If the movant satisfies its initial burden of demonstrating the absence of a material fact dispute, then the non-movant must identify specific evidence in the summary judgment record demonstrating that there is a material fact dispute concerning the essential elements of its case for which it will bear the burden of proof at trial. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The non-movant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Util., Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988). Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant must present evidence sufficient to support a resolution of the factual disputes in his favor. *Anderson*, 477 U.S. at 257. The non-movant must submit competent summary judgment evidence sufficient to defeat a properly

supported motion for summary judgment. *See, e.g., Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004).

Unserved and defaulting former officials are entitled to "benefit from the appearing defendants' favorable summary judgment motion." *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001).

Discussion

1. <u>Plaintiff has not alleged facts sufficient to proceed against Lori Davis and Lannette Linthicum as supervisors.</u>

TDCJ Defendants assert that Plaintiff's claims against TDCJ Director Lori Davis and TDCJ Healthcare Director Lannette Linthicum are based solely on their supervisory roles. They observe that he blames them for the conduct of other named defendants, and he attempts to demonstrate their liability by listing legal conclusions rather than alleging facts showing how their personal conduct caused his injuries. They correctly observe that personal involvement is an essential element of a civil rights cause of action. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). They argue that his claims against them are not cognizable under § 1983.

Plaintiff stresses in his response that Davis and Linthicum may be held responsible for the creation and implementation of policy. He goes on to focus on Anita Lindley, as opposed to their actions. It is noted that Defendant Lindley has not joined in the motion to dismiss. His complaints about her will be considered on another occasion. He argues that Davis and Linthicum may be held liable for conduct delegated to others and knowledge of misconduct by subordinates.

In his objections, Plaintiff again argues that Davis and Linthicum may be liable as policy makers.

In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates a defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Defendants correctly observe that Davis and Linthicum are being sued because of their supervisory roles, but the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). The Supreme Court recently stressed that the term supervisory liability in the context of a § 1983 lawsuit is a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. The Court rejected an argument that government officials may be held liable merely because they had knowledge or acquiesced in their subordinate's misconduct. *Id.* Citing *Iqbal*, the Fifth Circuit accordingly held that a prison supervisor was not liable since he was not personally involved in an incident. *Sterns v. Epps*, 464 F. App'x 388, 393 (5th Cir. 2012). It was reiterated that § 1983 does not create supervisory or respondeat superior liability. *Id.* at 394. Under 42 U.S.C. § 1983, a supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Plaintiff has not alleged facts satisfying either requirement. He does nothing more than make the conclusory claim that they may be held liable as policy makers, but he fails to identify any specific policy or to explain how those policies led to constitutional violations. Davis and Linthicum may be liable only for implementing a policy that is "itself [] a repudiation of constitutional rights" and "the moving force of the constitutional violation." *Grandstaff v. City*

*of Borger*, 767 F.2d 161, 169 (5th Cir. 1985).   Defendants Davis and Linthicum are entitled to have their motion to dismiss granted.

2.      <u>Plaintiff has not alleged facts sufficient to proceed with his claims about disciplinary cases.</u>

TDCJ Defendants argue next that Plaintiff's civil rights claims against Force, Britt, Serralde, and Opaogun about disciplinary matters are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).   Plaintiff's response to the motion to dismiss focuses on his criminal conviction, and he asserts that this case has nothing to do with his criminal conviction.

The Supreme Court has held that a plaintiff who seeks to recover damages under § 1983 for actions whose unlawfulness would render a conviction or sentence invalid must first prove that the conviction or sentence has been reversed, expunged, invalidated, or otherwise called into question. *Heck*, 512 U.S. at 486-87.   The Supreme Court provided the following explanation:

> We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.

*Id.* at 486.   The holding in *Heck* was extended to prison disciplinary proceedings in *Edwards v. Balisok*, 520 U.S. 641, 648 (1997).   The Fifth Circuit subsequently cited *Heck* and *Balisok* in affirming the dismissal of a civil rights lawsuit where an inmate alleged that prison guards subjected him to excessive use of force by spraying him with a can of mace.   *Donnelly v. Darby*, 81 F. App'x 823 (5th Cir. 2003).   More recently, the Fifth Circuit reiterated that an inmate may not bring a civil rights lawsuit about a prison disciplinary case unless he first shows that "his

disciplinary conviction has been invalidated by official action." *Lee v. Wade*, 593 F. App'x 410, 410 (5th Cir. 2015).

The Fifth Circuit has specified that claims barred by *Heck* should read as follows: "Plaintiff's claims are dismissed with prejudice to their being asserted again until the *Heck* conditions are met." *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996). The Fifth Circuit referred to this language as the "preferred" language. *Id.*

In the present case, Plaintiff's civil rights claims about prison disciplinary proceedings and matters interrelated to the disciplinary proceedings fall within the scope of the *Heck/Balisok* rule. Plaintiff has not shown that any of the disciplinary cases were reversed, invalidated, or called into question.

In his objections, Plaintiff states that he does not seek to have his disciplinary cases overturned, reversed, expunged or invalidated by this lawsuit. He must, nonetheless, satisfy the *Heck/Balisok* rule in order to proceed with his civil rights lawsuit regarding the disciplinary cases. He has not submitted any competent summary judgment evidence showing that he has satisfied *Heck/Balisok*.

Defendants Force, Britt, Serralde, and Opaogun are entitled to have their motion to dismiss granted with respect to claims against them involving prison disciplinary proceedings and matters interrelated to the prison disciplinary proceedings.

3.    <u>Plaintiff has not alleged facts sufficient to state a conspiracy claim.</u>

TDCJ Defendants focus next on Plaintiff's conspiracy claims against Defendants Force, Serralde, and St. Pe, and they presume that his claims fall under 42 U.S.C. § 1985(3).   Plaintiff states in his response that the TDCJ Defendants have misconstrued his claims.   He admits that he improvidently used the term "conspiracy," and he specifies that he is not suing them under § 1985(3).   Instead, he is suing them for harassment, retaliation, discrimination and interference with access to court.   In light of the response, the issue of whether Plaintiff has stated a conspiracy claim under § 1985(3) is moot.   Plaintiff's claims against Defendants Force, Serralde, and St. Pe still remain to the extent that Plaintiff is suing them under some other theory, such as harassment, retaliation, discrimination or interference with his right of access to court.

4.    <u>Plaintiff's claims about matters occurring before November 7, 2014 are time-barred.</u>

TDCJ Defendants correctly observe that the statute of limitations for § 1983 lawsuit claims in Texas is two years.   *See Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). They note that Plaintiff's lawsuit was filed on November 7, 2016.   They argue that Plaintiff's claims against them must have accrued no earlier than November 7, 2014.   Yet, several of his claims have their basis in events occurring before this two-year period: (1) certain claims regarding deterioration of his dental or medical health; (2) all claims alleged against Defendant St. Pe; (3) several claims against Defendant Force; and (4) Plaintiff's October 13, 2014 claim against Defendant Witt.   In response and objections, Plaintiff characterizes the claims as continuing and on-going.

There is no federal statute of limitations for 42 U.S.C. § 1983 actions; the relevant statute of the forum state furnishes the limitations period, but federal law determines the date the accrual commences. *Owens v. Okure*, 488 U.S. 235 (1989). The statute of limitations in Texas for § 1983 actions is two years. *Burrell v. Newsome*, 883 F.2d 416, 419 (5th Cir. 1989); *Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir. 1993). Accrual begins "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Burrell*, 883 F.2d at 418. With respect to arguments that a claim may still be pursued as a continuing tort, the Fifth Circuit has observed that, "under federal law, a continuing tort claim accrues when the plaintiff can file suit and obtain relief." *Bohannan v. Doe*, 527 F. App'x 283, 294 (5th Cir. 2013) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).

In the present case, Plaintiff's lawsuit was signed on November 7, 2016. It is deemed filed on that date in accordance with the "mailbox rule." All of Plaintiff's claims about matters that occurred before November 7, 2014 could have been filed within two years of the date on which they occurred. As such, all of his claims about matters that occurred before November 7, 2014 are time-barred. TDCJ Defendants thus correctly argue that the following claims are time-barred: (1) certain claims regarding deterioration of his dental or medical health involving incidents that occurred before November 7, 2014; (2) all claims alleged against Defendant St. Pe; (3) several claims against Defendant Force; and (4) Plaintiff's October 13, 2014 claim against Defendant Witt. TDCJ Defendants are entitled to have their motion to dismiss granted with respect to these claims.

5.     <u>Plaintiff has not alleged facts stating cognizable claims regarding property matters.</u>

TDCJ Defendants argue next that Plaintiff's property claims against Defendants St. Pe and Force are barred. In response, Plaintiff stresses that they improperly took his property. The Defendants reiterate that the property claims should be dismissed because Plaintiff is claiming that they confiscated property they knew was authorized.

The Supreme Court distinguished between claims about property being improperly confiscated, as in the present case, from those where property was confiscated pursuant to properly followed policies or practices in *Hudson v. Palmer*, 468 U.S. 517 (1984), and *Parratt v. Taylor*, 451 U.S. 527 (1981). Collectively, these cases are known as the *Parratt/Hudson* doctrine. Under the *Parratt/Hudson* doctrine, an "unauthorized, intentional deprivation of property" does not constitute a civil rights violation if there exists a meaningful and adequate post-deprivation remedy under state law. *Hudson*, 468 U.S. at 533. TDCJ Defendants appropriately observe that Plaintiff argues that they improperly took his property. The Texas court system provides an adequate post-deprivation remedy for the taking of any property. *See Holloway v. Walker*, 784 F.2d 1287, 1292 (5th Cir 1986). Moreover, the Texas state administrative and judicial systems provide an adequate state post-deprivation remedy for property taken from prisoners. *See* Tex. Gov. Code § 501.007. *Thompson*, 709 F.2d at 382; *Loftin v. Thomas*, 681 F.2d 364, 365 (5th Cir. 1982). Because Texas has adequate post-deprivation remedies, a prisoner does not have a basis for a § 1983 claim for the confiscation of his property. *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994).

Plaintiff reiterates in his objections that St. Pe and Force misused policy. His admission triggers the *Hudson/Parratt* doctrine. Defendants St. Pe and Force are entitled to have their motion to dismiss granted regarding Plaintiff's property claims.

6.     TDCJ Defendants have not shown they are entitled to qualified immunity.

TDCJ Defendants also argue that they are entitled to qualified immunity. They present nothing more than the following perfunctory paragraph:

> Although Plaintiff's amended complaint does not rely on the same boilerplate statements of liability of his original complaint, his clarified allegations are insufficient to overcome Defendants' entitlement to qualified immunity. Plaintiff's claims rely on listing legal conclusions, or as discussed above, are barred or otherwise not cognizable under Section 1983.

First Amended Motion to Dismiss (Dkt. #44), page 8. They did not discuss the defense of qualified immunity. Moreover, they failed to discuss the defense as it relates to the facts of this case. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995) (citation omitted); *accord United States v. Hayter Oil Co.*, 51 F.3d 1265, 1269 (6th Cir. 1995). TDCJ Defendants have not shown that they are entitled to have their motion to dismiss granted based on qualified immunity. They may ultimately be able to show that they are entitled to dismissal based qualified immunity in a well developed and documented motion for summary judgment, but they are not entitled to dismissal at this juncture based on qualified immunity.

Plaintiff states in his objections that he agrees with the analysis on qualified immunity. He has no objections on this matter. TDCJ Defendants have not shown that they are entitled to have their motion to dismiss granted based on qualified immunity.

7.  TDCJ Defendants are entitled to Eleventh Amendment immunity.

TDCJ Defendants finally argue that they are entitled to Eleventh Amendment immunity. The Eleventh Amendment provides that the State of Texas, as well as its agencies, are immune from liability. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983. *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). In *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." The Supreme Court upheld the dismissal of the Michigan Department of State Police and its Director sued in his official capacity. *Id.* The Fifth Circuit has accordingly "held that the Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). TDCJ Defendants are entitled to Eleventh Amendment immunity to the extent that Plaintiff has sued them for money damages in their official capacities.

8.  UTMB Defendants are entitled to summary judgment based on failure to exhaust administrative remedies for all claims occurring before Plaintiff exhausted his administrative remedies.

UTMB Defendants argue that they are entitled to summary judgment because Plaintiff failed to comply with exhaustion requirements. Judge Mitchell found the motion persuasive and that it should be granted. In his objections, Plaintiff argues that the UTMB Defendants were

deliberately indifferent to his serious medical needs, that his claims were filed in a timely fashion, and that he has exhausted his administrative remedies.

The law governing the exhaustion of administrative remedies is 42 U.S.C. § 1997e. In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In light of the enactment of the PLRA, the Supreme Court unanimously concluded that inmates must exhaust their administrative remedies before proceeding to federal court. *Booth v. Churner*, 532 U.S. 731 (2001). The Court subsequently held that the PLRA requires "proper exhaustion," meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). More recently, the Court reiterated "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). It was added, however, that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Id.* at 216.

Following *Bock*, the Fifth Circuit provided the following guidelines for handling the exhaustion issue:

> As a final matter, we now provide a brief summary of how district courts should approach exhaustion questions under the PLRA. When the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed on the merits. If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary.

*Dillon v. Rogers*, 596 F.3d 260, 272-73 (5th Cir. 2010). The Court noted that it has taken a "'strict' approach to the PLRA's exhaustion requirement." *Id.* at 268 (citing *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)). More recently, the Fifth Circuit expressly held that "district courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

Proper exhaustion is determined by reference to state grievance procedures. *Bock*, 549 U.S. at 217-18; *Patterson v. Stanley*, 547 F. App'x 510, 511 (5th Cir. 2013). TDCJ provides a two-step process for filing grievances. A Step 1 grievance must be submitted within fifteen days of the alleged incident. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). If an offender is dissatisfied with the outcome of the Step 1 response, he has fifteen days from the receipt of the Step 1 grievance to file a Step 2 appeal.[1]

In the present case, UTMB Defendants submitted the revelant grievance records. The records reveal that Plaintiff initially submitted a Step 1 grievance about dental care on June 19, 2015. The grievance was returned without being processed because he had submitted more than one grievance during a seven day period.

Plaintiff subsequently submitted another Step 1 grievance complaining about dental care in Grievance Number 2016005720 on September 8, 2015. He did not identify any dentist. The

---

[1]The Court notes that an inmate had ten days to file a notice of appeal at time *Johnson* was decided. *Johnson*, 385 F.3d at 515. The deadline was subsequently extended to fifteen days. *See Rosa v. Littles*, 336 F. App'x 424, 428 (5th Cir. 2009).

grievance was denied as unsubstantiated on October 14, 2015. Plaintiff did not submit a Step 2 grievance.

Plaintiff submitted another Step 1 grievance about dental care on October 9, 2015. The grievance was returned without being processed because the grievable time period had expired.

Plaintiff submitted a final Step 1 grievance about dental care in Grievance Number 2016202780 on August 25, 2016. His grievance failed to identify anyone, although he states that he talked to numerous members of the dental staff. He received a response dated September 2, 2016. The response indicates that he had restorative fillings on teeth numbers 17 and 18 on June 14, 2016. He was also scheduled to have fillings in teeth numbers 1 and 10. The grievance was denied as unsubstantiated. Plaintiff filed a Step 2 grievance on September 19, 2016. His complaint mentions a "string of dentists," although no specific dentist is identified. The response is dated October 4, 2016. The response notes that the first part of his dental care had been completed and that he would be told when his next dental appointment becomes available. The Step 2 grievance was denied.

Overall, the competent summary judgment evidence reveals that Plaintiff exhausted his administrative remedies with respect to just one grievance, which is Grievance Number 2016202780. He filed a Step 1 grievance on August 25, 2016, which was denied on September 2, 2016. He filed a Step 2 grievance on September 19, 2016, which was denied on October 4, 2016. Plaintiff has not submitted competent summary judgment evidence showing he filed both a Step 1 and Step 2 grievance with respect to any other dental claims.

In his objections, Plaintiff states that he refiled the grievance that was initially submitted on June 19, 2015.   He did not, however, submit a copy of the grievance in either his response or objections.   He asks the court to focus on the refiled grievance, but he did not submit competent summary judgment evidence supporting his claim that he refiled it and received responses at both the Step 1 and Step 2 levels.   Similarly, the grievance records submitted by the UTMB Defendants do not include any documentation supporting his claim.

In light of the foregoing, Plaintiff satisfied the exhaustion requirement when he completed Grievance Number 2016202780. In light of the fifteen day rule, Plaintiff exhausted his administrative remedies concerning the denial of dental care starting with incidents beginning on August 10, 2016.   Plaintiff alleges that Dr. Michael Walker and Dr. Donald Eckersley denied him dental care in 2016.   Neither dentist were among the dentists who filed the motion for summary judgment based on failure to exhaust administrative remedies.   Plaintiff may proceed with his dental claims against Dr. Walker and Dr. Eckersley.

Plaintiff argues that he should be permitted to proceed with his claims involving incidents before 2016 because the denial of dental care was a continuing violation.   The Fifth Circuit has established guidelines concerning the concept of a continuing violation in the context of exhaustion of administrative remedies.   *Johnson*, 385 F.3d at 521-22.   Once an inmate has complied with the exhaustion requirement, he is not obligated to repeatedly file grievances for a continuing deprivation or condition.   *Id.*   On the other hand, a grievance filed in response to a particular incident does not apply to claims to future incidents whether they are similar or discrete.   *Id.* at 522 n.13.   In such situations, an inmate must file a grievance for each separate incident.   *Id.*   In

the present case, Plaintiff exhausted his administrative remedies about being denied dental care in Grievance Number 2016202780. He was not required to file new grievances after that time regarding the continuing deprivation of dental care. However, the filing of the Step 1 grievance in Grievance Number 2016202780 did not excuse his failure to timely file grievances with respect to matters that occurred before August 10, 2016.

The Court observes that the UTMB Defendants made two additional arguments as to why they are entitled to summary judgment for failure to exhaust administrative remedies. They emphasize that Plaintiff's grievances failed to identify any of the dentists who purportedly denied him medical care. The Supreme Court, however, rejected a "name all defendants" rule, finding that the additional "procedural rule lacks a textual basis in the PLRA." *Bock*, 549 U.S. at 217.

The UTMB Defendants also argue that Plaintiff failed to exhaust his administrative remedies because he did not file the present complaint within thirty days after his Step 2 grievance was denied. Texas law provides that an inmate must file his claim in court "before the 31st day after the date the inmate receives the written decision from the grievance system." Tex. Civ. Prac. & Rem. Code § 14.05(b) (Vernon Supp. 2000). A court shall dismiss a claim if the inmate fails to file it in court before the 31st day after he receives the written decision from the grievance system. *Id. Gilbert v. Texas Dep't of Criminal Justice*, 490 S.W.3d 598, 608-09 (Tex. App.-Houston [1st Dist.] 2016, no pet.); *Wallace v. Texas Dep't of Criminal Justice - Inst. Div.*, 36 S.W.3d 607, 611 (Tex. App. - Houston [1st Dist.] 2000, pet. denied).

Defendants are confusing state law requirements for bringing a lawsuit in state court with the requirements of the PLRA. In federal court, an inmate may not bring a lawsuit "until such

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The inmate must comply with prison grievance procedures, including deadlines, but federal law does not impose an additional burden requiring him to comply with state law deadlines for filing a case in state court. Defendants have not cited any binding federal authority that an inmate must file a lawsuit in federal court within 31 days after the date he receives the written decision from the grievance system. Instead, the statute of limitations for civil rights lawsuits filed in federal court in Texas is two years. *Burrell v. Newsome*, 883 F.2d 416, 419 (5th Cir. 1989).

As a final matter, Plaintiff has sued dentists who have not responded to the lawsuit. It is once again noted that unserved and defaulting former officials are entitled to "benefit from the appearing defendants' favorable summary judgment motion." *Lewis*, 236 F.3d at 768. The dentists sued by Plaintiff for incidents that occurred before he exhausted his administrative remedies in 2016 are entitled to benefit from the UTMB Defendants' motion for summary judgment based on Plaintiff's failure to properly exhaust his administrative remedies, including Dr. Dwayne Evans, Dr. Leah Buck-Boehnemann, Dr. Breck Bennett, Dr. David Collins, and Dr. Ginger Lambright

<u>Default Judgment</u>

Plaintiff has filed a series of motions for default judgments (Dkt. ##17,64,97). In support of the motions, he explains that many of the Defendants did not timely file responses after the Court issued the Order to Answer (Dkt. #10). In response, counsel for the TDCJ Defendants notes that his failure to respond on behalf of Opaogun, Serralde, Witt, and Britt was oversight. These failures were inadvertent, as opposed to neglect or out of a desire to avoid the costs or

consequences of litigation. Counsel further argues that a default judgment is not proper here because these defendants had not been with a copy of the complaint.

Rule 55(a) of the Federal Rules of Civil Procedure provides for default judgments as follows:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

The entry of a default judgment is committed to the sound discretion of the district court. *Settlement Funding, LLC v. TransAmerica Occidental Life Ins.* Co., 555 F.3d 422, 424 (5th Cir. 2009); *Lewis*, 236 F.3d at 767. As a general rule, defaults are not favored. *See Rogers v. Hartford Life and Acc. Ins.* Co., 167 F.3d 933, 936 (5th Cir. 1999); *Dierschke v. O'Cheskey*, 975 F.2d 181, 183 (5th Cir. 1992). The Fifth Circuit has held that a "party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). In fact, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n.*, 874 F.2d 274, 276 (5th Cir. 1989). In cases where default has been entered, a court may set aside the entry of default on a showing of good cause. Fed. R. Civ. P. 55(c). With good cause being mistakes, inadvertence, excusable neglect, newly discovered evidence or fraud. *See Whitman v. United States Lines, Inc.*, 88 F.R.D. 528, 530 (E.D. Tex. 1980).

In the present case, the Office of the Texas Attorney General ("OAG") promptly filed responses with respect to current prison employees who gave the OAG permission to represent

them. Last known addresses were provided with respect to the remaining Defendants, and the Marshal's Service served them. The court notes that the OAG accepts orders to answer and seeks to obtain permission to represent State employees as a courtesy to the court, but the OAG's acceptance of this court's orders to answer does not waive a defendant's right to be properly served. Only a defendant may waive his/her right to be properly served. Plaintiff's arguments to the contrary are fallacious. All of the defendants other than Dwayne Evans have responded to the lawsuit. As was previously explained, Plaintiff's claims against Dwayne Evans should be dismissed. Since default judgments are not favored, the motions for a default judgment should be denied. Plaintiff's corresponding motions to strike Defendants' pleadings (Dkt. ##127,133) as late should likewise be denied.

Temporary Restraining Order and Injunction

Plaintiff has filed a motion for a temporary restraining order and injunction (Dkt. #116). He is seeking to obtain an order to stop and prevent the imminent loss and destruction of property.

Plaintiff's motion is governed by Rule 65 of the Federal Rules of Civil Procedure. A temporary restraining order and/or preliminary injunction is typically granted, pending trial on the merits, to prevent irreparable injury that may result before a dispositive trial. *Shanks v. City of Dallas, Texas*, 752 F.2d 1092, 1096 (5th Cir. 1985). The measures are designed to protect, for example, the *status quo* of the parties or the evidence the movant will need to use at trial to litigate his claims. To grant or deny a temporary restraining order and/or preliminary injunction is within the discretion of the trial court. *Apple Barrel Prod., Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir. 1984).

The prerequisites for a temporary restraining order and/or preliminary injunction are: (1) substantial likelihood that the moving party will prevail on the merits of the underlying suit, (2) a substantial threat that the moving party will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to the movant outweighs the threatened harm the injunction may do to the nonmovant, and (4) that granting the preliminary injunction and/or temporary restraining order will not disserve the public interest. *Libertarian Party of Texas v. Fainter*, 741 F.2d 728, 729 (5th Cir. 1984). Since a temporary restraining order and/or preliminary injunction is such an extraordinary, and perhaps drastic remedy, one is not granted unless the movant clearly carries the onerous burden of persuasion as to all the elements. *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (5th Cir. 1983).

In the present motion, Plaintiff's alleges that the Defendants improperly took his property. He seeks to obtain an order to stop and prevent the imminent loss and destruction of property. With respect to the first prerequisite, Plaintiff did not clearly demonstrate that he will prevail on the merits of the claims contained in his original complaint. Indeed, his property claim is barred by *Hudson v. Palmer*, 468 U.S. 517 (1984), and *Parratt v. Taylor*, 451 U.S. 527 (1981). With respect to the second prerequisite, he did not clearly demonstrate that he will suffer irreparable injury if the injunction is not granted. With respect to the third prerequisite, he did not clearly demonstrate that the threatened injury outweighs the harm of an injunction. Finally, he did not clearly demonstrate that the injunction would not disserve the public interest. It should be further noted that a court need not weigh relative hardships or the lack of one might cause the parties unless a plaintiff can show some likelihood of success. *Texas v. Seatrain Int'l, S.A.*, 518 F.2d

175, 180 (5th Cir. 1975). Plaintiff fails to clearly carry the burden of persuasion on any of the four prerequisites required to establish the need for a temporary restraining order or injunction. His motion should be denied.

Conclusion

Having conducted a *de novo* review of the record, the pleadings, and paper on file, it is accordingly

**ORDERED** that TDCJ Defendants Davis, Linthicum, Force, St. Pe, Opaogun, Serralde, Witt, and Britt's First Amended Motion to Dismiss (Dkt. #44) is **GRANTED**, in part, and **DENIED**, in part. More specifically, Plaintiff's claims against Defendants Davis, Linthicum, and St. Pe are **DISMISSED WITH PREJUDICE**. Plaintiff's claims against Defendants Force, Britt, Serralde, and Opaogun about disciplinary matters are **DISMISSED** to their being asserted again until the *Heck* conditions are met. Plaintiff's claims against Defendants St. Pe, Force and Witt regarding matters that occurred before November 7, 2014 are **DISMISSED WITH PREJUDICE**. Plaintiff's property claims against Defendants St. Pe and Force are **DISMISSED WITH PREJUDICE**. The claims against all of the TDCJ Defendants for monetary damages for actions taken in their official capacities are **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** that UTMB Defendants Devore, Folmar, Hensley, Ng, Pearman and Kavetzki's Motion for Summary Judgment (Dkt. #48) is **GRANTED** and the claims against them are **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** that UTMB Defendants Devore, Folmar, Hensley, Ng, Pearman and Kavetski's Motion for Summary Judgment is extended to Dr. Dwayne Evans, Dr. Leah Buck-Boehnemann, Dr. Breck Bennett, Dr. David Collins, and Dr. Ginger Lambright and the claims against them are **DISMISSED WITH PREJUDICE**.   It is further

**ORDERED** that Plaintiff's Motions for a Default Judgment (Dkt. ##17,64,97) and Motions to Strike Defendants' Pleadings (Dkt. ##127,133) are **DENIED**.   It is further

**ORDERED** that Plaintiff's Motion for a Temporary Restraining Order and Injunction (Dkt. #116) and is **DENIED**.   Plaintiff's corresponding Motion for Ruling on Motion for a Temporary Restraining Order and Injunction (Dkt. #122) is **GRANTED**.

Finally, the court once again observes that the lawsuit includes a wide array of claims against numerous people.   The claims that remain are (1) deliberate indifference to serious dental needs claims against Dr. Michael Walker and Dr. Donald Eckersley, (2) post-November 7, 2014 interference with access to court, harassment, retaliation and discrimination claims against Donna Force, (3) interference with access to court, harassment, retaliation and discrimination claims against Jill Serralde, and (4) deliberate indifference claims against Anitra Lindley.

**So Ordered and Signed**
Mar 19, 2018

_____
Ron Clark, United States District Judge